UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| *AMERICAN FAMILY MUTUAL INSURANCE COMPANY S.I.,* | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) Case No. |
| *SOUTHSIDE VENTURES, LLC* | ) ) |
| *LOG HILL PROPERTIES AND CONSULTING, LLC* | ) ) ) |
| *GREG LOGSDON* | ) ) |
| *ROBERT HILL* | ) ) |
| *TWINROCK HOLDINGS, LLC* | ) ) |
| *MO MURRAYFIELD, LLC* | ) ) |
| *TWINROCK PARTNERS, LLC* | ) ) |
| *SALVATION INVESTMENT, LLC* | ) ) ) |
| Defendants. | ) |

## COMPLAINT FOR DECLARATORY JUDGMENT

**COMES NOW** Plaintiff American Family Mutual Insurance Company, S.I. ("American Family"), by and through its attorneys, Sandberg Phoenix & von Gontard P.C., and for its Complaint for Declaratory Judgment, pursuant to 28 U.S.C. Section 2201 and Rule 57 of the Federal Rules of Civil Procedure, states as follows:

12600763.1

## PARTIES, JURISDICTION AND VENUE

1.      American Family is an insurance company incorporated under the laws of the State of Wisconsin with its principal place of business in Madison, Wisconsin.

2.      Defendant Southside Ventures, LLC ("Southside Ventures") is a Missouri limited liability company with its principal place of business in Missouri, and whose members are citizens of the state of Missouri.

3.      Defendant Log Hill Properties and Consulting, LLC ("Log Hill") is a Missouri limited liability company with its principal place of business in Missouri, and whose members are citizens of the state of Missouri.

4.      Defendant Greg Logsdon is an individual and citizen of the state of Missouri.  At all relevant times herein, Logsdon was a member of Southside Ventures and Log Hill.

5.      Defendant Robert Hill is an individual and citizen of the state of Missouri.  At all relevant times herein, Hill was a member of Southside Ventures and Log Hill.

6.      Defendant TwinRock Holdings, LLC ("TwinRock Holdings") is a Delaware limited liability company with its principal place of business in California.  Its member is TwinRock Partners, LLC ("TwinRock Partners"). TwinRock Holdings is a subsidiary of TwinRock Partners, and was the original purchaser of the Property from Southside Ventures. On information and belief, TwinRock Holdings later sold or otherwise transferred record ownership of the Property to MO Murrayfield.

7.      Defendant TwinRock Partners is a Delaware limited liability company with its principal place of business in California.  Its members include citizens of California. Defendant MO Murrayfield, LLC ("MO Murrayfield") is a Delaware limited liability company with its

2

principal place of business in California. Its members include citizens of California. MO Murrayfield owned the Property at all relevant times.

8. TwinRock Holdings, TwinRock Partners and MO Murrayfield are sometimes collectively referred to as the "TwinRock Entities".

9. Defendant Salvation Investment, LLC ("Salvation Investment") is a Nevada limited liability company with its principal place of business in California. Members of Salvation Investment include citizens of California.

10. This Court has original jurisdiction over this matter under 28 U.S.C. § 1332(a) because it is a civil action between citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

11. Venue is proper in the United States District Court for the Western District of Missouri under 28 U.S.C. § 1391(b)(2), and Local Rule 3.1(b), because a substantial part of the events giving rise to this action took place within the Western District of Missouri.

## FACTS

12. This lawsuit arises from two separate lawsuits: (1) *TwinRock Holdings, LLC, et al. v. Southside Ventures, LLC, et al.*, currently pending in the Circuit Court of Boone County, Missouri, cause no. 18BA-CV00443 ("Boone County case") *See Exh. 1, Second Amended Petition*, attached hereto and incorporated by reference herein; and (2) *Salvation Investment, LLC v. MO Murrayfield, LLC, et al.*, currently pending in the Superior Court of Orange County, California, cause no. 30-2019-01050162-CU-SL-CXC ("Orange County case") *See Exh. 2, First Amended Complaint and Demand for Jury Trial*, attached hereto and incorporated by reference herein.

3

13.     Both cases arise from the 2016 sale and purchase of a 328-unit student housing apartment complex located in Boone County Missouri, formerly known as Log Hill Run, located at 5151 Commercial Drive, Columbia, Missouri 65203 (the "Property").

*The Boone County Case*

14.     The plaintiffs to the Boone County case are TwinRock Holdings, MO Murrayfield, and TwinRock Partners.  They allege they are in the business of investing in real estate on behalf of their investors, and a portion of the portfolio is dedicated to student housing real estate.

15.     Southside Ventures, Log Hill, Logsdon, and Hill are defendants to the Boone County case.

16.     The plaintiffs in the Boone County case allege that on September 21, 2015, Marcus & Millichap Real Estate Services, Inc. ("Marcus & Millichap") sent unsolicited communication to the TwinRock Entities notifying them of the potential opportunity to purchase the Property.  At that time, the Property was owned and managed by Southside Ventures, Log Hill, their members Logsdon and/or Hill (collectively the "Log Hill defendants").

17.     On or about October 30, 2015, the TwinRock Entities made an offer, through Marcus & Millichap, to purchase the Property for $14.25 million, including a number of contingencies.

18.     The Log Hill defendants did not accept that offer; rather they accepted an offer from a competing investor, Monarch Investment & Management Group ("Monarch").

19.     On February 2, 2016, an agent of Marcus & Millichap called an agent of the TwinRock Entities and reported the Monarch transaction had failed to close, purportedly due to Monarch having trouble obtaining financing.

4

20.    The TwinRock Entities subsequently increased their prior offer to purchase the Property from $14.25 million to $14.5 million on February 4, 2016, and on February 12, 2016 increased it again to $14.7 million.

21.    In conjunction with those offers, the Log Hill Defendants, through Marcus & Millichap, represented in an Offering Memorandum: (a) that the Property was supported by a "100% parental guarantee," and (b) that the Property was 100% leased, and (c) that parent guarantees all leases.

22.    The parties entered into a purchase agreement for $14.7 Million.  In connection with the purchase agreement, the Log Hill Defendants made the following agreements and representations:

      a.    Agreed to provide inspection reports on the Property and certify their accuracy;

      b.    Agreed to provide a rent roll for the Property identifying leases in place;

      c.    Agreed to continue entering new leases;

      d.    Agreed to provide a biweekly "scorecard" with information on new leases;

      e.    Represented that no tenant were entitled to any rebates, rent concessions, allowances; or free rent;

      f.    Represented that no default or breach existed as to any tenant;

      g.    Agreed to collect parental guarantees and run background checks on parental guarantors;

      h.    Agreed to provide executed copies of new leases; and

12600763.1

Agreed that as of June 10, 2016, the Property would be 90% pre-leased for the 2016/2017 academic year with effective rental rates of at least $475 per bed (with the exception of one lease already signed for $450 per bed).

23. The scorecards reflected worse than represented pre-lease figures after entering into the purchase agreement, but the Log Hill Defendants stated they were "right on track."

24. In order to meet the June 10, 2016 deadline, the TwinRock entities assert the Log Hill Defendants entered a variety of inappropriate leases, including:

a. Entering leases altered from 12 months to 10 months and allowing for early tenant termination;

b. Entering leases without parental guarantee or without parental background checks;

c. Offering renewals at a discounted rate, for which the Log Hill Defendants would represent a rate of $475 on the written lease, but pay the tenant the difference in cash;

d. Paying cash to tenants to renew leases;

e. Telling existing and prospective tenants to sign the lease, but that they would not actually have to pay.

25. After those allegedly improper leases were entered, the May 5, 2016 scorecard reflected a pre-lease rate of 89.3% for the coming academic year. Based on those representations, the TwinRock entities, Marcus & Millichap, and the Log Hill Defendants executed a contingency removal and waived certain termination rights on May 9, 2016, and subsequently closed the transaction.

26.     The TwinRock Entities learned allege that after closing on the Property, they learned for the first time that Monarch did not complete its original purchase of the Property due to what it believed were misrepresentations by the Log Hill Defendants and that neither Marcus & Millichap nor Log Hill Defendants failed to provide notice of to the TwinRock Entities.

27.     The TwinRock Entities allege that as a result of the defendants' conduct, they were damaged as follows:

     a.  The purchase price of the Property, in addition to the cost of financing and interest;

     b.  Damages from exposure to debt by operating at a deficit;

     c.  Severe disruption to their business operations;

     d.  Foreclosure on the mortgage debt because the Property's cash flow was insufficient to pay the debt;

     e.  Return of investor funds from other investments, and lost investors' funds,

     f.  Threatened litigation by investors.

     g.  "Severe" damage to their "valuable and hard-earned reputations.

28.     Total damages are alleged to exceed $50 million.

29.     On the basis of these allegations, the TwinRock entities allege eight causes of action:

    I.      Fraudulent Misrepresentation against Marcus & Millichap

    II.     Negligent Misrepresentation against Marcus & Millichap

    III.    Breach of Contract (purchase agreement) against the Log Hill defendants

    IV.     Breach of Contract (management agreement) against the Log Hill defendants

    V.      Fraudulent Misrepresentation against the Log Hill defendants

12600763.1

VI.    Negligent Misrepresentation against the Log Hill defendants

VII.    Conspiracy against all defendants

VIII.    Breach of fiduciary duty against the Log Hill defendants

*The Orange County Case*

30.    Salvation Investment is the plaintiff, both in its individual capacity and derivatively on behalf of MO Murrayfield.  Salvation Investment alleges it is a member of Mo Murrayfield, who it alleges engaged in a conspiracy designed to abscond with investor funds through the purchase and sale of securities in MO Murrayfield.

31.    The defendants to the California Complaint are numerous and include the Twin Rock Entities, Log Hill Defendants, as well as other entities, and individuals.

32.    In addition to the facts set forth in the Boone County case, Salvation Investment also alleges MO Murrayfield represented to its investors that the Property was underpriced by its seller(s) (i.e. the Log Hill defendants), but that that all defendants materially misrepresented the value and condition of the Property to investors, including its occupancy, the credit profile of the tenants, and the financial projections for the Property.

33.    Within two years of purchase of the Property with funds invested by Salvation Investment and other Investors in MO Murrayfield, the Property was foreclosed upon for less than half the value of the total consideration.

34.    Salvation Investment further alleges the Orange County case defendants attempted to cover their conduct by misrepresenting that the losses resulted from a decrease in student enrollment at the University of Missouri, which was a pretext designed to delay, hinder and obfuscate the recovery of their investment funds.

12600763.1

35.     Salvation Investment also alleges the Boone County case is not directed at obtaining compensation for the TwinRock Entities' losses, but rather is a subterfuge designed to obtain a release of liability from investors for the Twin Rock Entities and others for the Missouri transaction.

36.     Salvation Investment alleges that the defendants acted "maliciously, oppressively, and with the intent to defraud." *See Ex. 2, First Amended Complaint and Demand for Jury Trial,* Par. 13.

37.     The TwinRock Entities are alleged to have been complicit in the Log Hill defendants' efforts to misrepresent the status of leases and value of the Property as alleged in the Boone County case.

38.     On the basis of these facts; the Orange County case alleges sixteen causes of action:

    I.    Violation of the California Corporations Code Sec. 25401 and 25501 against MO Murrayfield, for selling a security including an untrue statement of material fact;

    II.    Violation of the California Corporations Code Sec. 25504 against Philips, Meyer, TRP Management, TwinRock Holdings, TwinRock Partners, Hill, Logsdon, Southside, Marcus & Millichap, Harris, Stang, Chetek, and Flechsig, for individual liability for the violations of California Corporations Code Sec. 25401 and 25501 in Count I;

    III.    Breach of contract against MO Murrayfield;

    IV.    Violation of the California Corporations Code Sec. 17704.10 against MO Murrayfield and TRP Management for failing to provide the information and inspection rights provided by statute;

12600763.1

V.  Fraud and deceit against all defendants;

VI.  Fraud and deceit derivatively on behalf of MO Murrayfield against Philips, Meyer, TRP Management, TwinRock Holdings, TwinRock Partners, TwinRock Fund Management, TRP Azzurri, Hill, Logsdon, Southside Ventures, Log Hill, Marcus & Millichap, Harris, Stang, Chetek, and Flechsig;

VII.  Breach of fiduciary duty against all defendants;

VIII.  Breach of fiduciary duty derivatively on behalf of MO Murrayfield against Philips, Meyer, TRP Management, TwinRock Holdings, TwinRock Partners, TwinRock Fund Management, TRP Azzurri, Hill, Logsdon, Southside, Log Hill, Marcus & Millichap, Harris, Stang, Chetek, and Flechsig;

IX.  Violation of the California Penal Code Sec. 496 against all defendants for obtaining Plaintiff's Property by theft, on false pretenses, and knowingly withholding it;

X.  Violation of the California Penal Code Sec. 496 derivatively on behalf of MO Murrayfield against Philips, Meyer, the Managing Member, TwinRock Holdings, TwinRock Partners, TwinRock Fund Management, TRP Azzurri, Hill, Logsdon, Southside, Log Hill, Marcus & Millichap, Harris, Stang, Chetek, and Flechsig

XI.  Fraudulent transfer under the Uniform Voidable Transactions Act against all defendants for making illegal transfers intended to defraud investors in MO Murrayfield;

XII.  Common law fraudulent transfer against all defendants;

XIII.  Willful misconduct against all defendants;

XIV.  Negligence against all defendants;

12600763.1

XV.    Unfair competition against all defendants in violation of California Business and Professions Code Sec. 17200 et seq. for engaging in fraudulent business acts or practices, or making unfair, deceptive, untrue, or misleading advertisements;

XVI.    Restitution against all defendants for unjust enrichment.

*See Ex. 2, generally.*

39.    The allegations and claims made in the Second, Sixth, Seventh, Tenth, Twelfth, Thirteenth, Fourteenth, Fifteenth, Sixteenth, Seventeenth, Eighteenth, Nineteenth and Twentieth Causes of Action are directed against Hill, Logsdon, Southside Ventures, and Log Hill. Salvation Investment brings at least the claims made in the Seventh, Twelfth and Fourteenth Causes of Action in a derivative capacity on behalf of MO Murrayfield.

40.    As damages, Salvation Investment alleges it lost the value of its investment, approximately $600,000.  Salvation Investment seeks rescission and recovery of its investment losses, treble/punitive damages, equitable relief, attorneys' fees, and costs.

## The American Family Policy

41.    American Family issued a policy of insurance to Southside Ventures, policy number 24XK284901 (the "Policy").  The effective dates of the Policy were February 7, 2015 to February 7, 2016.

42.    The Policy contains a property coverage part and a commercial general liability part with endorsements; the insured premises and building(s) are located at a number of addresses in 5000 and 5100 blocks of Commercial Drive, Columbia, Missouri 65203.  The Policy has, subject to all of its terms and conditions, a $2,000,000 general aggregate limit of insurance.  There is no separate per occurrence limit.  A true and accurate copy of the Policy is attached as *Exh. 3*, and incorporated by reference herein.

12600763.1

43.     The Policy issued by American Family contains the following relevant provisions among others:

**SECTION II – LIABILITY**

**A. Coverages**

   **1. Business Liability**

      **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury", to which this insurance does not apply. We may at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result….

* * *

      **b.** This insurance applies:
        (1) To "bodily injury" and "property damage" only if:
          (a) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
          (b) The "bodily injury" or "property damage" occurs during the policy period; …

* * *

        (2) To "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period.

      **c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph C.1. Who Is an Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of "bodily injury" or "property damage" after the end of the policy period.

* * *

**B. Exclusions**
   **1. Applicable to Business Liability Coverage**

      This insurance does not apply to:

12

**a. Expected or Intended Injury**

"Bodily Injury" or "property damage" expected or intended from the standpoint of the Insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect person or property.

* * *

**k. Damage to Property**

"Property damage" to:

(1) Property you own, rent or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

* * *

**n. Damage to Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

* * *

**p. Personal and Advertising Injury**

"Personal and advertising injury":

(1) Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";

(2) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

* * *

13

(5) Arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement";

However, this exclusion does not apply to Paragraphs 14.a., b. and c. of "personal and advertising injury" under Paragraph F. Liability and Medical Expenses Definitions.

\* \* \*

**r. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

\* \* \*

**C. Who is an insured**

**1.** If you are designated in the Declarations as:

\* \* \*

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as managers.

\* \* \*

**2.** Each of the following is also an insured:

\* \* \*

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business….

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

\* \* \*

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

\* \* \*

**F. Liability And Medical Expenses Definitions**

12600763.1

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters…

\* \* \*

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:
    a. False arrest, detention or imprisonment;
    b. Malicious prosecution;
    c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
    d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
    e. Oral or written publication, in any manner, of material that violates a person's right of privacy;
    f. The use of another's advertising idea in your "advertisement"; or
    g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

\* \* \*

17. "Property damage" means:
    a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
    b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

\* \* \*

**AMERICAN FAMILY LIABILITY CHANGES**

\* \* \*

E. Exclusions in Section II – Liability:

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" resulting from the rendering of or failure to render financial services by any insured to others. For the purpose of this exclusion, financial services include but are not limited to:

1. Planning, administering or advising on:

15

12600763.1

**a.** Any:

    (1) Investment;

    (2) Pension;

    (3) Annuity;

    (4) Savings;

    (5) Checking; or

    (6) Individual retirement plan, fund or account;

  b. The issuance or withdrawal of any bond, debenture, stock or other securities;

  c. The trading of securities, commodities or currencies; or

  d. Any acquisitions or mergers;

**2.** Acting as a dividend disbursing agent, exchange agent, redemption or subscription agent, warrant or script agent, fiscal or paying agent, tax withholding agent, escrow agent, clearing agent, or electronic funds transfer agent;

**3.** Lending, or arranging for the lending of, money, including credit card, debit card, leasing or mortgage operations or activities or interbank transfers;

**4.** Repossessing of real or personal property from a borrower or acting as an assignee for the benefit of creditors;

**5.** Checking or reporting of credit;

**6.** Maintaining of financial accounts or records;

**7.** Tax planning, tax advising or the preparation of tax returns; or

* * *

**EXCLUSION PUNITIVE DAMAGES**

* * *

The following is added to Paragraph B.  Exclusions in Section II – Liability:

This insurance does not apply to:

**Punitive Damages**

Punitive or exemplary damages.

16

12600763.1

* * *

**Tender and Defense Under Reservation of Rights**

44.     Southside Ventures, Log Hill, Logsdon, and Hill tendered to American Family and demanded a defense and indemnity for the allegations made against them in the Boone County case and the Orange County case.

45.     American Family agreed to and is currently providing Southside Ventures, Log Hill, Logsdon, and Hill with a defense in the Boone County case and the Orange County case, subject to a full reservation of rights.

**COUNT I – DECLARATORY JUDGMENT IN THE BOONE COUNTY CASE**

46.     American Family incorporates, as if fully set forth herein, the allegations set forth in paragraphs 1 through 45 above.

47.     The American Family Policy provides coverage for covered claims according to all of the terms and conditions of each of those respective policies, including any endorsements and exclusions to coverage. There is currently a justiciable issue regarding whether American Family has a duty to defend and/or indemnify Southside Ventures, Log Hill, Logsdon, and/or Hill under the American Family Policies for any of the claims made, and/or damages sought, in the Boone County case.

48.     The allegations contained in the Boone County case allege that Southside Ventures, Log Hill, Logsdon, and/or Hill failed to satisfy their contractual obligations and/or made intentional and/or fraudulent misrepresentations in relation to the sale of the Property. The alleged conduct does not constitute an "accident," which is an "occurrence" under the Policy.

49.     Even if a covered "occurrence" is alleged, the damages sought in the Boone County case are not covered "property damage" under the Policy. The Boone County case seeks

17

recovery for the purchase price of the Property, the cost of financing, as well as lots profits and other economic damages associated with Southside Ventures alleged misrepresentations.

50.     These alleged damages are solely economic and/or pecuniary in nature, and are not covered "property damage" within the meaning of the Policy.

51.     The damages sought in the Boone County case for foreclosure of the Property also is not covered "property damage" under the Policy. Because these damages too are alleged to result from the economic and financial losses; they are also solely economic and/or pecuniary and are not covered "property damage."

52.     To the extent any of the damages alleged in the Boone County case are deemed to be covered "property damage," no coverage exists to the extent they occurred after the policy period, which ended on February 7, 2016.

53.     To the extent any alleged "loss of use" is deemed to be covered "property damage" no coverage exists because it could not have happened until after the closing on of the transaction in which the Twin Rock Entities acquired the Property, after May 9, 2016, when the parties executed the agreement containing the contingency removal and waived termination rights of the purchase contract, which is after the policy period expired.

54.     Even if a covered "occurrence" and resulting covered "property damage" are deemed to have occurred during the policy period, the Policy exclusion for damage to "property you own, rent, or occupy" bars coverage, because the alleged misrepresentations were made before the sale of the Property, and while Southside Ventures still owned the property.

55.     The "Damage to Property" exclusion also excludes from coverage any "property damage" to Premises you sell, give away or abandon, if the 'property damage' arises out of any

12600763.1

part of those premises, because the alleged misrepresentations related to and resulted from the sale of the Property.

56. Coverage is also excluded by the expected or intended injury exclusion, because the damages in the Boone County case are alleged to result from conduct that was expected or intended to injure the plaintiffs.

57. Coverage is also excluded by the damage to impaired property or property not physically injured exclusion, because the Boone County case alleges that the plaintiffs' damages arise from a breach of a contractual obligation by Southside Venture and/or its agents.

58. There is no coverage under the personal and advertising injury coverage part of the Policy, because the alleged damages do not result from an "offense" committed within the meaning of the Policy.

59. The conduct alleged in the Boone County case does not come within the definition of "personal and advertising injury," because the Boone County case does not allege that Southside Ventures and/or its agents damaged the plaintiffs' reputation by libel or slander.

60. Coverage under the personal and advertising injury part is also excluded by the exclusion for knowing violations of the rights of others, because the damages resulted from acts at the direction of Southside Ventures, Log Hill, Logsdon, and/or Hill with the knowledge the act would violate the plaintiffs' rights or cause the alleged injury.

61. Coverage under the personal and advertising injury part is also excluded by the exclusion for injuries arising out of criminal acts committed by the insured or at the direction of the insured, because the Boone County case contains allegations of fraudulent conduct.

62. No coverage exists for the punitive damages alleged in the Boone County case, because they are excluded by the Policy's exclusion for punitive or exemplary damages.

12600763.1

63.     No coverage exists for any of the alleged $50,000,000 in damages in excess of the Policy limits.

64.     There is a present and justiciable controversy or dispute over coverage under the American Family Policy, including whether American Family has a duty to defend and/or a duty to indemnify Southside Ventures, Log Hill, Logsdon, and/or Hill from claims made in the Boone County case.  This controversy is ripe for determination.

WHEREFORE, Plaintiff American Family Mutual Insurance Company, S.I. prays this Court to enter judgment in its favor, and against Defendants, declaring that American Family has no duty to defend and/or indemnify Southside Ventures, Log Hill, Logsdon, and/or Hill, because there is no coverage under the American Family Policies, or any of them individually, for any of the claims, injuries, and/or damages sought in the First Amended Petition, Third-Party Petition, Cross-Claim, and/or as otherwise may be alleged, or claimed to be alleged against Southside Ventures, Log Hill, Logsdon, and/or Hill in the Boone County case, and finding that American Family does not otherwise have any duty to defend and/or indemnify Southside Ventures, Log Hill, Logsdon, and/or Hill in the Boone County case, and/or as to any of the other Defendants in the Boone County case, there is not any coverage for any damages or other relief sought by the plaintiffs to the Boone County case because of their alleged injuries, and/or otherwise with regard to the allegations against them, or sought to be made, in the Boone County case, for its costs, and for all further orders and relief this Court deems just and proper under the circumstances.

## COUNT II – DECLARATORY JUDGMENT IN THE ORANGE COUNTY CASE

65.     American Family incorporates, as if fully set forth herein, the allegations set forth in paragraphs 1 through 64 above.

66.     The American Family Policy provides coverage for covered claims according to all of the terms and conditions of each of those respective policies, including any endorsements and exclusions to coverage. There is currently a justiciable issue regarding whether American Family has a duty to defend and/or indemnify Southside Ventures, Log Hill, Logsdon, and/or Hill under the American Family Policies for any of the claims made, and/or damages sought, in the Orange County case.

67.     The allegations contained in the Orange County case allege that Southside Ventures, Log Hill, Logsdon, and/or Hill breached certain provisions of the California Corporations Code, Penal Code and breach other common law duties by making intentional and/or fraudulent misrepresentations made in relation to the sale of the Property. The alleged conduct does not constitute an "accident," which is an "occurrence" under the Policy.

68.     Even if a covered "occurrence" was alleged, the damages sought in the Orange County case are not covered "property damage" under the Policy, because the Orange County case seeks recovery for Salvation Investment's lost financial investment, as well as lots profits and other economic damages associated with the alleged misrepresentations.

69.     The damages alleged are solely economic and/or pecuniary in nature, and are not covered "property damage" within the meaning of the Policy.

70.     Similarly, the damages sought in the Orange County case for foreclosure of the Property are not covered "property damage" under the Policy, because the damages are alleged to result from the economic and financial losses; they are also solely economic and/or pecuniary and do not allege covered "property damage."

12600763.1

71.     To the extent any of the damages alleged in the Orange County case constitute "property damage," no coverage exists to the extent they occurred after the policy period, which ended on February 7, 2016.

72.     To the extent any alleged "loss of use" is determined to be covered "property damage" no coverage exists because it could not have happened until after the closing on of the transaction in which the Twin Rock Entities acquired the Property, after May 9, 2016, when the parties executed the agreement containing the contingency removal and waived termination rights of the purchase contract, which is after the policy period ended on February 7, 2016.

73.     Even if a covered "occurrence" and resulting covered "property damage" occurred during the policy period, the Policy exclusion for damage to "property you own, rent, or occupy" bars coverage, because the alleged misrepresentations were made before the sale of the Property, and while Southside Ventures still owned the property.

74.     The "Damage to Property" exclusion also excludes from coverage any "property damage" to Premises you sell, give away or abandon, if the 'property damage' arises out of any part of those premises, because the alleged misrepresentations related to and resulted from the sale of the Property.

75.     Coverage is also excluded by the expected or intended injury exclusion, because the damages in the Orange County case are alleged to result from conduct that was expected or intended to injure Salvation Investment.

76.     Coverage is also excluded by the damage to impaired property or property not physically injured exclusion, because the Orange County case alleges that Salvation Investment's damages arise from a breach of a contractual obligation by Southside Venture and/or its agents.

77.     There is no coverage under the personal and advertising injury coverage part of the Policy, because the alleged damages do not result from an "offense" committed within the meaning of the Policy.

78.     The conduct alleged in the Orange County case does not come within the definition of "personal and advertising injury," because the Orange County case does not allege that Southside Ventures and/or its agents damaged the TwinRock Entities' reputation by libel or slander.

79.     Furthermore, coverage under the personal and advertising injury part is also excluded by the exclusion for knowing violations of the rights of others, because the damages resulted from acts at the direction of Southside Ventures, Log Hill, Logsdon, and/or Hill with the knowledge the act would violate the plaintiffs' rights or cause the alleged injury.

80.     Coverage under the personal and advertising injury part is also excluded by the exclusion for injuries arising out of criminal acts committed by the insured or at the direction of the insured, because the Orange County case contains allegations of fraudulent conduct and allegations of purported civil liability for violations of the California Penal Code for obtaining Salvation Investment's property by theft.

81.     Coverage for any alleged property damage or personal and/or advertising injury is excluded by the Policy's exclusion for providing "financial services," because Southside Ventures, Log Hill, Logsdon, and Hill are alleged to have conspired with the Twin Rock Entities in violating certain California securities statutes by making misrepresentations related to the solicitation of investment in connection with the purchase of the Property.

82.     No coverage exists for the punitive damages alleged in the Orange County case, because they are excluded by the Policy's exclusion for punitive or exemplary damages.

12600763.1

83. No coverage exists for any of the alleged damages in excess of the Policy limits.

84. There is a present and justiciable controversy or dispute over coverage under the American Family Policy, including whether American Family has a duty to defend and/or a duty to indemnify Southside Ventures, Log Hill, Logsdon, and/or Hill from claims made in the Orange County case. This controversy is ripe for determination.

WHEREFORE, Plaintiff American Family Mutual Insurance Company, S.I. prays this Court to enter judgment in its favor, and against Defendants, declaring that American Family has no duty to defend and/or indemnify Southside Ventures, Log Hill, Logsdon, and/or Hill, because there is no coverage under the American Family Policies, or any of them individually, for any of the claims, injuries, and/or damages sought, and/or as otherwise may be alleged, or claimed to be alleged against Southside Ventures, Log Hill, Logsdon, and/or Hill in the Orange County case, and finding that American Family does not otherwise have any duty to defend and/or indemnify Southside Ventures, Log Hill, Logsdon, and/or Hill in the Orange County case, and/or as to any of the other Defendants in the Orange County case, there is not any coverage for any damages or other relief sought by the plaintiffs to the Orange County case because of their alleged injuries, and/or otherwise with regard to the allegations against them, or sought to be made, in the Orange County case, for its costs, and for all further orders and relief this Court deems just and proper under the circumstances.

12600763.1

Respectfully Submitted,

SANDBERG PHOENIX & von GONTARD P.C.

By: /s/*Philip C. Graham*
      Philip C. Graham, #40345MO
      Benjamin R. Wesselschmidt, #66321MO
      600 Washington Avenue - 15th Floor
      St. Louis, MO  63101-1313
      314-231-3332
      314-241-7604 (Fax)
      E-mail: pgraham@sandbergphoenix.com
      E-mail: bwesselschmidt@sandbergphoenix.com

      Attorneys for Plaintiff *American Family Mutual Insurance Company, S.I.*

12600763.1